LOUIS M. ODEN, JR., and ORIE L. ODEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Oden v. Commissioner
Docket Nos. 2869-87; 2870-87.
United States Tax Court
T.C. Memo 1988-567; 1988 Tax Ct. Memo LEXIS 600; 56 T.C.M. (CCH) 851; T.C.M. (RIA) 88567; December 15, 1988. Thomas B. Cantieri, for the petitioners. Richard F. Stein, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined income tax deficiencies for 1982 and 1983 in the respective amounts of $ 6,239.46 and $ 13,523.25 against petitioners, husband and wife, who had filed joint returns for those years. Although there was only a single deficiency notice for the two years, separate petitions were filed in respect of each year, and the petition for 1982 was filed as a small tax ("S") case. Thereafter, pursuant to motion, *601 the "S" designation was removed from the 1982 case and both cases were consolidated for "trial, briefing, and opinion." At issue is the deductibility as "ordinary and necessary business expenses" ( section 162(a) of the Internal Revenue Code) of payments of damages and associated legal expenses in connection with a defamation suit against Orie L. Oden (hereinafter "Mrs. Oden" or "petitioner"). [1] The case was submitted on the basis of a stipulation of facts. At the time the petitions herein were filed, petitioners resided in Norfolk, Virginia. From 1957 to 1983, Mrs. Oden conducted a sole proprietorship florist business known as "Hunter Florist." Adell M. Lawson ("Lawson"), petitioner's niece, worked at Hunter Florist for approximately ten years. She was a full-time employee from 1975 through March 8, 1980, when she voluntarily terminated her employment with Hunter Florist. She had served as a manager of the business during *602 the last nine months of her employment, and prior thereto she was a floral designer and waited on trade. After leaving Hunter Florist, Lawson applied for jobs with Allstate Insurance Company ("Allstate") and Pilot Life Insurance Company ("Pilot") as a sales agent. On October 7, 1980, Billy Fleming of Equifax, a consumer reporting firm, contacted petitioner with respect to Lawson's application for employment with Pilot. Based on the statements of petitioner contained in the Fleming report, Lawson was denied employment with Pilot. On October 21, 1980, James C. Claudio, sales training manager for Allstate contacted petitioner by telephone at Hunter Florist seeking information about Lawson's character and qualifications. Based on the statements of petitioner contained in the Claudio report, Lawson was denied employment with Allstate. The Fleming report contained statements which were substantially the same as those contained in the Claudio report. Lawson obtained a copy of the Claudio report containing petitioner's statements. The Claudio report and the Fleming report formed the basis for a defamation suit brought by Lawson against petitioner. After a three-day jury trial, petitioner *603 was found to have slandered Lawson. The jury awarded Lawson $ 26,000 in compensatory damages. No punitive damages were awarded. Petitioner's appeal to the Virginia Supreme Court was denied. Petitioners deducted $ 11,709.07 and $ 7,443.67 on their 1982 and 1983 returns, respectively, as legal fees for attorney representation in the defamation suit. On their 1983 income tax return, they also deducted $ 26,000 for the compensatory damages paid to Lawson. They support these deductions as ordinary and necessary business expenses pursuant to section 162(a) of the Internal Revenue Code. In his notice of deficiency, the Commissioner disallowed the foregoing claimed deductions on the ground that the expenses were "nondeductible personal expenses under Section 262 of the Internal Revenue Code." Section 262 states that "no deduction shall be allowed for personal expenses." But the other side of the coin in this case is section 162(a), upon which petitioners rely. It grants a deduction for "all the ordinary and necessary expenses paid * * * in carrying *604 on any trade or business." And it is upon the applicability of section 162(a) that this case turns since section 262 would become automatically inapplicable if the expenses in issue were found to be ordinary and necessary business expenses. For reasons set forth hereinafter, we conclude that the expenses involved are not deductible under section 162. We first examine the slander suit with a view to learning the meaning of the jury verdict as establishing the character of Mrs. Oden's slanderous statements. The Claudio report to Allstate purporting to contain the responses made by Mrs. Oden is in evidence here. Although the report itself was excluded from evidence in the slander suit as too prejudicial, it was nevertheless the basis for Lawson's suit, and it contains the only evidence before us of what might have been presented to the court in that suit. In that document, petitioner was reported to have said, among other things, that Lawson was "not very stable," that she "walked out on Mother's Day," that petitioner would "not hire her back," that there was a "$ 300 discrepancy in cash register," that she "threw fit, using profane language," that there were "no cash sales shown *605 for 17 straight days -- only checks," that she "lost a house due to Financial difficulties," that she "would do anything for money: dangerous people," that petitioner would not recommend her to "anyone where cash handling is involved." On the record before us we have no way of telling what the jury may have found as false in any of the foregoing responses. The only thing in the record in this respect is a meager paragraph in the stipulation of the parties herein to the effect that after a three-day jury trial, "petitioner was found to have slandered Ms. Lawson." Regardless of which statements the jury may have found to be false, the nature of its verdict in the light of the instructions given by the trial judge is crucial here and has become the focus of what we regard to be the principal controversy between the parties herein. The Government contends that the jury verdict against petitioner establishes that the false statements were made with malice or with such gross indifference and recklessness as to amount to a wanton or willful disregard of Lawson's rights, [2] and that the resulting expenses were therefore not ordinary and necessary business expenses. Petitioners challenge *606 that position, relying upon their interpretation of the trial judge's Instruction No. 3, which reads as follows: Words that impute that a person either: 1. Committed a criminal offense involving moral turpitude such as larceny; or 2. Was unfit to perform the duties of her office or employment; or 3. Lacked integrity in the discharge of her duties of employment; or 4. Which prejudiced her in her profession or trade; are slanderous per se. That is, they are slanderous from their very nature and without further proof thereof. The law presumes damages to result from their publication. Nowhere in Instruction No. 3 is there any requirement of malice, and the Government does not deny that if that instruction were all that is involved, the jury could have returned a verdict for the plaintiff in the absence of any showing of malice. But it contends that much more than Instruction No. 3 is involved, and it relies upon Instruction No. 6 to show that the jury verdict must indeed be interpreted *607 as establishing that the jury rested its verdict upon its conclusion that the defendant's defamatory statements were infected with malice. Instruction No. 6 reads as follows: Under certain circumstances a person has a qualified privilege to make even defamatory or untrue statements about another without being liable for damages. This is a separate and distinct defense from truth. Under the circumstances in this case, the statements made by the defendant, Mrs. Oden, were privileged because inquiries were being made about the plaintiff's qualifications and fitness for employment by another, to Mrs. Oden as a former employer. Mrs. Oden's statements, therefore, were protected by privilege unless the plaintiff proves by a preponderance of the evidence that the privilege was abused. The Court instructs you that such a privilege is abused only when the statement complained of is made with actual malice, or malice in fact, existing at the time the statement is made. No malice is presumed from the use of defamatory words. Actual malice, or malice in fact, means that the statement was made from some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or deliberate *608 desire to injure the plaintiff; or that it was made with such gross indifference and recklessness as to amount to a wanton or willful disregard of the rights of the plaintiff. If Instruction No. 6 played a part in the jury's verdict, there can be no serious question that the jury found malice. Petitioners do not contend otherwise. But they do argue that it could not have been the basis for the verdict, since, in their view, Instruction Number 3 was a "stand alone" instruction, not subordinated to any other, and does not require any finding of malice as does Number 6. We hold that Instruction No. 3 is not a completely "stand alone" instruction, and that it is subordinate to defenses that the defendant might have in a defamation suit. A notable example is Instruction No. 8, which states that "Truth is a defense to an action for defamation." Certainly, the jury verdict in this case must have been based on a finding that the defendant's slanderous statement or statements were false. Otherwise,they would not have been actionable at all. Instruction No. 3 plainly did not foreclose truth as a defense, and was indeed subordinate to Instruction No. 8. Similarly, it did not foreclose *609 the qualified privilege defense embodied in Instruction No. 6. The jury was told in No. 6 that Mrs. Oden's statements were privileged because inquiries were made of her as a former employer with respect to the fitness and qualifications of the plaintiff for employment by another, and that her statements were therefore protected by privilege unless the plaintiff proved by a preponderance of the evidence that the privilege was abused. Thus, regardless of the falsity of the defamatory statements, the jury could not have returned a verdict against Mrs. Oden unless it had found that there had been an abuse of the privilege in accordance with Instruction No. 6. Moreover, Instruction No. 6 goes on to tell the jury that the privilege is abused "only when the statement complained of is made with actual malice, or malice in fact." And No. 6 proceeds further to instruct the jury that malice means that the statement was made from some sinister or corrupt motive like hatred, revenge, personal spite, ill will, or deliberate desire to injure the plaintiff, or that it was made with such gross indifference and recklessness as to amount to a wanton or willful disregard of the plaintiff's rights. *610 In the light of this charge, the jury could not possibly have returned a verdict against Mrs. Oden unless it determined that her false statements had been made with malice or with such gross indifference or recklessness as to amount to a wanton or willful disregard of Lawson's rights. We therefore conclude that petitioner's expenses incurred in connection with the slander suit were not ordinary and necessary business expenses. It is one thing to make defamatory statements about an employee in a business context -- statements that normally would be privileged, Brown v. Norfolk & W. Ry Co.,100 Va. 619, 42 S.E. 564 (1902). It is quite another, as shown in Brown, to make such statements with malice. The mere fact that a tort, or for that matter a crime, is committed in a business context does not automatically require that the expenses incurred in subsequent resulting litigation be treated as ordinary and necessary business expenses. To take an extreme example, is there any doubt that expenses incurred in defense of charges of assault with a deadly weapon would not be *611 treated as deductible business expenses, notwithstanding that the defendant-taxpayer in great anger at the climax of a heated and acrimonious business negotiation shot another participant at the business meeting? Although not nearly as extreme, we think that the present case is on the same side of the line. In our view, the finding of malice is critical here, and expenses incurred in defense of resulting charges against petitioner do not qualify as ordinary and necessary business expenses. We do not undertake to decide here, nor are we called upon to do so, whether false defamatory statements in the absence of malice are on the other side of the line. Cf. Vanderbilt v. Commissioner,T.C. Memo. 1957-235, 16 T.C.M. 1081, 1088, 26 P-H Memo T.C. par. 57,235 (libel damages - no discussion of possible malice). This case is unlike Commissioner v. Tellier,383 U.S. 687 (1966), where legal expenses in defending against a criminal charge were held deductible as ordinary and necessary business expenses. The criminal charges in that case related to fraud in the actual conduct of the taxpayer's business and were directly in furtherance of that business. *612 Here, on the other hand, malicious statements in the circumstances of this case could by no stretch of the imagination be considered as in furtherance of Mrs. Oden's florist business. We finally emphasize that the burden of proof was upon petitioner to prove that there was no malice here. They have not attempted to do so, and the jury verdict in any event establishes to our satisfaction that petitioner's statements found to be slanderous were made with malice. The claimed deductions for expenses resulting from the slander suit are not deductible. Decisions will be entered for the respondent.
Footnotes
1. Also involved is the correctness of the amount of self-employment tax determined by the Commissioner, which, however, will be resolved automatically by the decision in respect of the business expense deduction in controversy.↩
2. Unless otherwise indicated, the word malice will be used in this opinion simply as a shorthand expression to include not only malice but also the alternatives set forth above.↩